UNITED STATES DISTRICT COURT
NONTHERN DISTRICT OF OHIO

------------------------------------------------------

: 
AARON E. YOUNG, : CASE NO. 1:14-CV-01237
:
      Plaintiff, :
:
v. : OPINION AND ORDER
: [Resolving Doc. 26]
STEFAN JOHNSON, ET AL., :
:
      Defendants. :
:

------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Plaintiff Aaron Young, an inmate housed at Ohio's Lorain Correctional Institution ("the prison"), brings this action under 42 U.S.C. § 1983. With this action, Young alleges that three prison officials—Defendants Stefan Johnson, Ronald Pawlus, and Laura Solnick—violated his rights under the First, Eighth, and Fourteenth Amendments to the United States Constitution.[1/] Defendants have moved for summary judgment.[2/] For the following reasons, the Court **GRANTS** Defendants' motion.

**I. Background**

**A. Grievance Process**

Defendants largely say that Plaintiff Young failed to exhaust internal prison grievance

---

[1/] *See* Doc. 3. Plaintiff Young also brought claims against a fourth prison official, Stephen Gray, but those claims have been dismissed. *See* Doc. 25.

[2/] Doc. 26. Plaintiff has not filed any opposition to the motion, despite having been granted an extension. *See* Doc. 30. Nevertheless, the Court will consider Plaintiff's verified complaint, which is based on personal knowledge and contains detailed factual allegations, *see* Fed. R. Civ. P. 56(c)(1)(B)(4), as an affidavit opposing summary judgment for the purposes of deciding this motion. *See Sharp v. Makowski*, 238 F.3d 423, 2000 WL 1800215, at *5 (6th Cir. Nov. 28, 2000) (unpublished table opinion) (citing *Hooks v. Hooks*, 771 F.2d 935, 946 (6th Cir. 1985)).

-1-

Case No. 1:14-CV-01237
Gwin, J.

processes and should be barred from making claims that were never presented to that grievance procedure. Before going into the specifics of Young's claims, some background about the inmate grievance process is therefore necessary. Under Ohio law, prisons are required to institute a three-step inmate grievance procedure "to address inmate complaints related to any aspect of institutional life that directly and personally affects the griveant," including "the actions of institutional staff."[3]

In step one, the inmate must file an "Informal Complaint" describing the incident using specific details and information regarding dates, times, names, and places.[4] The appropriate prison official must then respond in writing.

If the Informal Complaint is denied or not answered, then the prisoner may file a "Notification of Grievance."[5] In order to file a Notification of Grievance, the prisoner must obtain the appropriate form from the Inspector of Institutional Services; at Lorain Correctional Institution, this person is Defendant Pawlus. Once filed, the Inspector of Institutional Services must respond to the Notification of Grievance in writing.

Finally, if the Notification of Grievance is also denied, then the prisoner may file an Appeal with the Office of the Chief Inspector.[6] Once the Chief Inspector responds with his decision, the grievance process is complete.

There is a limited exception to this grievance process. When a prisoner is complaining about the Warden or the Inspector of Institutional Services, the grievance "must be filed directly to the

---

[3] Ohio Admin. Code 5120-9-31(A).
[4] *Id.* 5120-9-31(K)(1).
[5] *Id.* 5120-9-31(K)(2).
[6] *Id.* 5120-9-31(K)(3).

Case No. 1:14-CV-01237
Gwin, J.

Office of the Chief Inspector."[7] The Chief Inspector's decision on the grievance is considered final without any further action.

### B. Young's Grievances

Plaintiff Young's claims arise from two separate series of incidents. In the first, Young alleges that Defendant Johnson made discriminatory anti-Muslim remarks. Young alleges that after he filed a grievance against Johnson, Defendants Pawlus and Solnick intentionally mishandled it. And when Young complained about this mishandling of his grievance, Defendant Pawlus allegedly threatened him. In the second series of incidents, Young alleges that Defendant Johnson continued to harass him, first by filing a false Conduct Report leading to disciplinary action, and then by threatening to have dogs attack him.

**1. Defendant Johnson's Anti-Muslim Remarks and Following Retaliation**

*a. Defendant Johnson's Makes Anti-Muslim Remarks to Plaintiff Young*

On April 25, 2013, in response to news coverage of the Boston Marathon bombing, Defendant Johnson, a corrections officer at the prison, allegedly shouted discriminatory anti-Muslim slurs at Plaintiff Young. Young claims that these discriminatory remarks violated his rights under the Eighth and Fourteenth Amendments.[8] On or about May 1, 2013, Plaintiff Young filed an Informal Complaint against Johnson over this incident.[9]

*b. Defendants Pawlus and Solnick Mishandle Plaintiff Young's Grievance*

Plaintiff Young says prison officials retaliated against him after he filed this Informal

---

[7] *Id.* 5120-9-31(M).
[8] Doc. 3 at ¶¶ 33, 34.
[9] This Informal Complaint was not among the documents submitted as part of the summary judgment record. However, the complete list of all grievances filed by Plaintiff Young does show that on May 1, 2013, he filed an informal complaint for "[r]acial or ethnic slurs." Doc. 26-2 at 6.

Case No. 1:14-CV-01237
Gwin, J.

Complaint. On May 2, 2013, one day after Young filed the Informal Complaint, Young was put into segregation, where he remained for a few days. In support of his belief that being placed in segregation was retaliatory, Plaintiff Young points to the actions of Defendants Pawlus and Solnick.[10/] Young says that Defendant Pawlus warned him not to file the Informal Complaint. After filing the Informal Complaint, Young asked Unit Manager Administrator Defendant Solnick about its status. Defendant Solnick allegedly gave Young the runaround, telling him that his Informal Complaint had been sent to Melissa Cantoni, a prison investigator. Cantoni, however, said she never received it. Young says these actions by Defendants Pawlus and Solnick—covering up Johnson's discriminatory actions and placing Young in segregation as retaliation for filing the Informal Complaint—violated his rights under the First and Fourteenth Amendments.[11/]

On May 5, 2013, Plaintiff Young's Informal Complaint was apparently resolved, although the evidence suggests that Young was never given a formal written response.[12/] Some time in late May 2013, Young requested a Notification of Grievance from Defendant Pawlus so he could continue the grievance process. But, per prison policy, Defendant Pawlus refused to give Young a Notification of Grievance because Young did not have a copy of the written denial of his Informal Complaint.[13/]

Young did not press his grievance against Defendant Johnson any further. Instead, he shifted his focus to Defendants Pawlus and Solnick and based claims against them on their perceived

---

[10/]Doc. 3 at ¶¶ 16–18, 24–29.
[11/]Doc. 3 at ¶¶ 38, 39, 42, 43.
[12/]The written resolution of the Informal Complaint was also not part of the summary judgment record. However, Plaintiff Young's grievance history reflects that the Informal Complaint was resolved on May 5, 2013. Doc. 26-2 at 6, 10.
[13/]Doc. 3 at ¶ 19; Doc. 26-3 at 3; Doc. 26-2 at 9.

-4-

Case No. 1:14-CV-01237
Gwin, J.

mishandling of the grievance. On or about June 11, 2013, Young filed a Notification of Grievance with the Chief Inspector against Pawlus and Solnick.[14] In the Notice of Grievance, Young accused Pawlus and Solnick of not seriously considering his grievance against Defendant Johnson, and of "trying to cover [Johnson's] discrimination up."[15]

*c. Defendant Pawlus Threatens Young*

Young alleges that, on July 3, 2013, after he had filed this Notification of Grievance against Defendant Pawlus, Pawlus called Young into his office and threatened him with a can of mace while asking him about why he had filed the grievance.[16]

On July 10, 2013, the Chief Inspector denied Plaintiff Young's Notification of Grievance, finding that Defendant Pawlus had followed proper prison procedure in handling Young's grievance against Defendant Johnson. The next day, July 11, 2013, Young once again asked Pawlus for a Notification of Grievance so Young could continue pressing his complaints against Johnson. Pawlus allegedly responded that Young should not file any more complaints against prison officials, or else Pawlus would "bury" Young in segregation "just like he buried those Informal Complaints."[17]

Young claims these threats by Defendant Pawlus violate his rights under the First and Fourteenth Amendments.[18]

**B. Continuing Harassment by Defendant Johnson**

---

[14]Doc. 26-2 at 7.
[15]*Id.* On June 28, 2013, Plaintiff Young filed an Informal Complaint with the Warden making the same complaints about Defendant Pawlus's handling of his grievance against Defendant Johnson. On July 8, 2013, the Warden's office responded to Plaintiff Young: "This issue has already been appealed to the Chief Counsel (Inspector). Please wait for your decision." Doc. 26-2 at 15.
[16]Doc. 3 at ¶ 21; Doc. 26-2 at 9.
[17]Doc. 3 at ¶ 23.
[18]*Id.* at ¶¶ 37, 38, 40, 41.

Case No. 1:14-CV-01237
Gwin, J.

*a. Defendant Johnson Files a Conduct Report Against Plaintiff Young*

Plaintiff Young worked as a prison porter, which included cleaning and maintenance duties. On August 20, 2013, Defendant Johnson instructed Young to clean a fan. Young refused because he believed the fan did not need cleaning. On August 21, 2013, Johnson filed a Conduct Report[19] against Young based on this incident.[20] The Hearing Officer's Report[21] found Young guilty of this misconduct, leading to a verbal warning and restricted visitation rights.[22]

Young says that the Conduct Report was retaliatory. Young says that he and Johnson had an argument on August 21, 2013—the day after Young refused to clean the fan, and the same day that Johnson wrote the Conduct Report.[23] As part of this argument, Young says he threatened to have his mother call the prison and complain about Johnson's ongoing harassment. Young says it was this argument and the threat of having his mother call the prison—and not his refusal to clean the fan—that is responsible for the Conduct Report and the subsequent punishments he received. Young claims that this retaliatory action violated his rights under the First Amendment.[24]

*b. Defendant Johnson Threatens Young with a Dog Attack*

Plaintiff Young says that Defendant Johnson has continued to harass him since that incident. Young alleges that, on September 12 or 13, 2013, Johnson threatened to have dogs attack him.[25]

---

[19] Filing a Conduct Report is the first step a prison official takes in order to discipline a prisoner for a violation of the inmate rules of conduct. *See* Ohio Admin. Code 5120-9-07(B).

[20] Doc. 26-2 at 21.

[21] The Hearing Officer reviews the Conduct Report and interviews witnesses—including the prisoner charged with the violation—regarding the incident. After completing this review and issuing a Report, the Hearing Officer's conclusions and any discipline imposed are submitted to the Rules Infraction Board for a final review. Ohio Admin. Code 5120-9-07(E)–(G).

[22] Doc. 26-2 at 22.

[23] Doc. 3 at ¶¶ 9–12.

[24] *Id.* at ¶ 35.

[25] *Id.* at ¶ 14; Doc. 26-2 at 19.

Case No. 1:14-CV-01237
Gwin, J.

Young claims this threat violated his rights under the Eighth Amendment.[26]

## II. Legal Standards

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[27] The moving party must first demonstrate that there is an absence of a genuine dispute as to a material fact entitling it to judgment.[28] Once the moving party has done so, the non-moving party must set forth specific facts in the record—not its allegations or denials in pleadings—showing a triable issue.[29] The existence of some doubt as to the material facts is insufficient to defeat a motion for summary judgment.[30] But the Court views the facts and all reasonable inferences from those facts in favor of the non-moving party.[31]

## III. Analysis

### A. Claims That Fail to Exhaust Administrative Remedies

The Prison Litigation Reform Act ("PLRA") requires a prisoner to exhaust "available" administrative remedies before he may file an action "with respect to prison conditions," including cases alleging particular bad acts by prison officials.[32] Exhaustion is an affirmative defense that must be proved by Defendants,[33] and is determined by looking at the prison's requirements—here

---

[26] Doc. 3 at ¶ 36.
[27] Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986).
[28] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
[29] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).
[30] *Id.* at 586.
[31] *Coble v. City of White House, Tenn.*, 634 F.3d 865, 868–69 (6th Cir. 2011) (citing *Scott v. Harris*, 550 U.S. 372 (2007)).
[32] 42 U.S.C. § 1997e(a); *Porter v. Nussle*, 534 U.S. 516 (2002).
[33] *Jones v. Bock*, 549 U.S. 199, 216 (2007).

Case No. 1:14-CV-01237
Gwin, J.

the Ohio grievance procedure.[34]

**1. Claims Against Defendants Pawlus and Solnick for Being Placed in Segregation**

Plaintiff Young says that Defendants Pawlus and Solnick retaliated against him for filing an Informal Complaint against Defendant Johnson. Shortly after he filed the Informal Complaint, Young was put into a segregation unit for a few days. Young claims this segregation was retaliation that violated his First Amendment rights.[35] Defendants say Young was actually put into segregation because he was suspected to have been part of a prison gang that had made threats against other prisoners and staff, not because of the Informal Complaint.[36]

Young never filed a grievance against any Defendant alleging that his being moved to segregation was in any way improper. Young filed other grievances against Defendants Pawlus and Solnick, but those only dealt with the alleged procedural mishandling of the Informal Complaint filed against Defendant Johnson. Nowhere in those grievances does Young mention being moved to segregation. Because Young never addressed these claims through the administrative process, Defendants' motion for summary judgment as to these claims is **GRANTED**.

**2. Claim Against Defendant Pawlus for Threatening Remarks**

Plaintiff Young claims Defendant Pawlus twice threatened him, thereby violating his First Amendment rights. Neither of the claims, however, has been administratively exhausted.

*a. Intimidation Following Young Filing a Notification of Grievance*

Defendant Pawlus allegedly "harass[ed] and intimidat[ed] Young" by threatening Young with

---

[34] *Woodford v. Ngo*, 548 U.S. 81, 88, 90–95 (2006).
[35] Doc. 3 at ¶¶ 39, 43.
[36] Doc. 26-1 at 2.

-8-

Case No. 1:14-CV-01237
Gwin, J.

a can of mace after Young filed a Notification of Grievance against Pawlus.[37/] On or about June 11, 2013, Young filed a Notification of Grievance against Defendant Pawlus that complained about Pawlus's handling of the grievance against Defendant Johnson.[38/] On July 8, 2013, Young filed a "supplement" to his Notification of Grievance against Pawlus that described a conversation between the two men. The supplement says: "Pawlus called me to his office on 7-3-13 (I felt intimidated) and asked me why did I say he tried to persuade me not to write an Informal Complaint on the issue that occurred on 4-25-13? I told him he did. . . . I went on to state that . . . he was suppose[d] to investigate the matter on 4-25-13."[39/] The supplement then relates Pawlus's explanation for why he handled Young's grievance against Defendant Johnson the way he did, and reiterates Young's complaints that Pawlus was not following proper procedure or taking his grievance seriously.

Only in the complaint he filed in this case, however, did Young allege for the first time that the reason he was "intimidated" was because Pawlus had "stood over" him with a can of mace.[40/] Young claims this incident of harassment and intimidation constituted retaliation in violation of Young's First Amendment rights.[41/]

"Proper exhaustion serves the necessary interest of providing 'fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint.'"[42/] Accordingly, Ohio law requires a prisoner's complaint to "contain specific information: dates, times, places, the event giving rise to the complaint, and, if

---

[37/] Doc. 3 at ¶ 41.
[38/] Doc. 26-2 at 7.
[39/] *Id.* at 9.
[40/] Doc. 3 at ¶ 21.
[41/] *Id.* at ¶ 41.
[42/] *Troche v. Crabtree*, No. 1:12-cv-176, 2015 WL 160717, at *4, (S.D. Ohio Jan. 12, 2015) (quoting *LaFountain v. Martin*, 334 F. App'x 738, 740 (6th Cir. 2009)).

Case No. 1:14-CV-01237
Gwin, J.

applicable, the names of personnel involved."[43] Fairly read, the supplement focuses its complaints on Pawlus's handling of Young's grievance against Johnson, not on Pawlus's allegedly threatening behavior. Because Young's grievance did not put the prison on notice of Young's claim, he has not exhausted his administrative remedies as to this claim, and Defendants' motion for summary judgment on this claim is **GRANTED**.

*b. Threat to "Bury" Young in Segregation*

On July 11, 2013, Pawlus allegedly told Young he would "bury" Young in segregation if Young filed another grievance against a prison official, which Young claims violates his First Amendment rights.[44] But, Young did not file a grievance against Pawlus regarding this alleged threat. At best, Young says he wrote a letter to the Chief Inspector describing this incident and saying that he feared for his safety.[45] The prison, however, has been unable to locate this letter.[46]

Although some courts have held that there is an exception to the PLRA's exhaustion requirement when the prisoner fears retaliation if he files a grievance,[47] the Sixth Circuit has not recognized this exception.[48] Ohio law specifies a particular grievance procedure using particular forms that prisoners must follow, and even if Young sent a letter to the Chief Inspector, it would not have complied with that procedure.[49] Because of this failure to use the grievance procedure,

---

[43] Ohio Admin. Code 5120-9-31(K).
[44] Doc. 3 at ¶ 40.
[45] *Id.* at ¶ 31.
[46] Doc. 26-4.
[47] *E.g.*, *Turner v. Burnside*, 541 F.3d 1077, 1084–85 (11th Cir. 2008); *Hemphill v. New York*, 380 F.3d 680, 686–87 (2d Cir. 2004).
[48] *See, e.g.*, *Solomon v. Mich. Dep't of Corr.*, 478 F. App'x 318, 321 (6th Cir. 2012); *Lovett v. Gundy*, 111 F. App'x 810, 812 (6th Cir. 2004); *see also Ramos v. Gansheimer*, No. 1:12-cv-132, 2013 WL 775353, at *5–6 (N.D. Ohio Feb. 26, 2013).
[49] *See* Ohio Admin. Code 5120-9-31(H) ("Retaliation or the threat of retaliation for the use of the inmate grievance procedure is strictly prohibited. Any alleged or threatened retaliation may be pursued through the inmate grievance procedure."); Ohio Admin. Code 5120-9-31(J) ("Only forms designated by the chief inspector may be used
(continued...)

-10-

Case No. 1:14-CV-01237
Gwin, J.

Young has failed to exhaust his administrative remedies on this claim and Defendants' motion for summary judgment is **GRANTED**.

**3. Claim Against Defendant Johnson for Threatening a Dog Attack**

Plaintiff Young claims that Defendant Johnson threatened to have dogs attack Young, thereby violating Young's Eighth Amendment rights.[50] Young did not file an Informal Complaint regarding this incident. Instead, he raised it only at the second level of the grievance process, by adding it as a claim to the Notification of Grievance through which he appealed the denial of an Informal Complaint he had earlier filed against Johnson.[51] Ohio's inmate grievance process, however, requires that all Informal Complaints contain "specific information" about the incident.[52] Further, after that Notification of Grievance was denied, Young did not reiterate his allegations about the threat of a dog attack in his Appeal to the Chief Inspector.[53] Because Plaintiff Young did not properly raise this issue through the grievance process, he has not exhausted his administrative remedies, and Defendants' motion for summary judgment as to this claim is accordingly **GRANTED**.

### B. Merits of Remaining Claims

Young has exhausted his administrative remedies for the rest of his claims. The Court therefore turns to the merits of these claims.

---

[49](...continued)
to file informal complaints, grievances, and grievance appeals."); *see also* Hattie v. Hallock, 8 F. Supp. 2d 685, 689–90 (N.D. Ohio 1998) (requiring a grievance to be submitted on a particular form is a "formalistic but reasonable prerequisite to the[] exhaustion of administrative remedies," and a prison may properly reject grievances that do not strictly comply with such requirements).
[50] Doc. 3 at ¶ 36.
[51] *Compare* Doc. 26-2 at 19 (Notification of Grievance), *with id.* at 20 (Informal Complaint).
[52] Ohio Admin. Code 5120-9-31(K).
[53] Doc. 26-2 at 17.

Case No. 1:14-CV-01237
Gwin, J.

**1. Claims Against Defendant Johnson Related to Anti-Muslim Remarks**

Plaintiff Young claims that anti-Muslim remarks made by Defendant Johnson violated Young's rights under the Eighth and Fourteenth Amendments.[54] Both of these claims lose on their merits.

The Eighth Amendment prohibits "cruel and unusual punishments."[55] However, "harassment and verbal abuse . . . do not constitute the type of infliction of pain that the Eight Amendment prohibits."[56] Because Defendant Johnson shouting anti-Muslim slurs does not violate the Eighth Amendment, Defendants' motion for summary judgment on this claim is **GRANTED**.

The Fourteenth Amendment guarantees equal protection of the laws to all citizens. But using epithets or slurs is not a violation of the Equal Protection Clause, although such statements may be evidence of a discriminatory purpose when the defendant has engaged in some other form of harassment.[57] Plaintiff Young has not alleged that Defendant Johnson engaged in any bad conduct with respect to this incident other than making anti-Muslim remarks. This claim therefore fails as a matter of law and Defendants' motion for summary judgment is **GRANTED**.

**2. Claims Against Defendants Pawlus and Solnick for Mishandling Plaintiff Young's Grievance Against Defendant Johnson**

---

[54] Doc. 3 at ¶¶ 33, 34. Although Plaintiff Young never proceeded past the Informal Complaint stage with this grievance, that is because he apparently never received a final written decision on his Informal Complaint, and therefore could not obtain a Notification of Grievance to proceed with the grievance process. This made the grievance process "unavailable" to Young on this claim, thereby defeating any exhaustion defense. *See Boyd v. Corr. Corp. of Am.*, 380 F.3d 989, 996 (6th Cir. 2004) ("[A]dministrative remedies are exhausted when prison official fail to timely respond to a properly filed grievance.").

[55] U.S. Const. Amend. VIII.

[56] *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (citing *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987)).

[57] *Taylor v. City of Falmouth*, 187 F. App'x 596, 601 (6th Cir. 2006) (citing *King v. City of Eastpointe*, 86 F. App'x 790, 814 (6th Cir. 2003) (Moore, J., concurring in part and dissenting in part)); *Owens v. Johnson*, 221 F.3d 1335, 2000 WL 876766 (6th Cir. June 23, 2000) (unpublished table opinion).

Case No. 1:14-CV-01237
Gwin, J.

Plaintiff Young brings three claims related to the alleged mishandling of his grievance against Defendant Johnson for making anti-Muslim remarks. Young claims that Defendants Pawlus and Solnick violated his Fourteenth Amendment due process rights by "cover[ing] up Johnson's discriminatory actions."[58] Similarly, Young says Pawlus's refusal to provide him with a Notification of Grievance so he could appeal the denial of his Informal Complaint against Johnson is itself a violation of his Fourteenth Amendment rights.[59] In both cases, Young's complaints relate to the way his grievances have been handled by staff.[60]

Prisoners do not have a constitutionally protected due process right to grievance procedures.[61] As a result, Pawlus's and Solnick's alleged mishandling of Young's grievance against Johnson cannot have violated Young's constitutional rights. Defendants' motion for summary judgment on these claims is therefore **GRANTED**.

**4. Claim Against Defendant Johnson for Filing a Conduct Report Against Plaintiff Young**

Plaintiff Young claims Defendant Johnson filed a Conduct Report against him in retaliation for an argument between the two, thereby violating Young's First Amendment rights.[62] A prisoner's

---

[58] Doc. 3 at ¶¶ 38, 42.
[59] Doc. 3 at ¶ 37.
[60] Doc. 26-2 at 7 (The Notification of Grievance Young filed regarding this conduct complained that "the administrative body at [the prison] is not taking [Defendant Johnson's anti-Muslim remarks] seriously."). Young exhausted his administrative remedies on this claim by following the prison grievance procedure. The final decision of the Chief Inspector denying Young's Appeal was issued on July 10, 2013. *Id.* at 8.
[61] *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005).
[62] Doc. 3 at ¶ 35. Young was found guilty of a conduct violation, and Defendants have not presented sufficient evidence to show that Young did not exhaust his administrative remedies to appeal that decision. Defendants present only the Hearing Officer's Report. Doc. 26-2 at 22. Defendants have not made any argument or presented any evidence as to whether the Rules Infraction Board reviewed the decision, or whether Young appealed, or, if so, what the outcome was. *See* Ohio Admin. Code 5120-9-07; *id.* 5120-9-08. Because the burden is on Defendants to establish failure to exhaust administrative remedies, the exhaustion defense loses as to this claim. Furthermore, although the Court recognizes that the prison grievance procedure is not a substitute for an appeal of the Hearing Officers' Report, *id.* 5120-9-31, Young did use the prison grievance procedure to complain that the Conduct Report was made in retaliation, thereby putting the prison on notice of the problem and allowing it to investigate Young's allegations in the first instance. The Chief Inspector denied Young's Appeal on November 1, 2013. Doc. 26-2 at 16.

Case No. 1:14-CV-01237
Gwin, J.

rights can be violated if prison officials retaliate against him for engaging in conduct protected by the First Amendment.[63] "To set forth a prima facie case of retaliation, plaintiff must establish: 1) he engaged in protected conduct; 2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and 3) that a causal connection exists between the first two elements."[64]

Crediting Young's version of events, it appears that Young had an argument with Defendant Johnson during which Young threatened to have his mother call the prison and complain about Johnson.[65] Arguing with corrections officers is not protected activity.[66] Furthermore, after reviewing the evidence a Hearing Officer found Young guilty of a conduct violation for not cleaning the fan as ordered.[67] Where, as here, there is a sufficient factual basis to support the disciplinary action taken against a prisoner, the prisoner's claim that the discipline was retaliatory fails.[68] The motion for summary judgment as to this claim is therefore **GRANTED**.

---

[63] *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010).
[64] *Moes v. Milton*, No. 4:06-cv-490, 2006 WL 1348114, at *5 (N.D. Ohio May 15, 2006) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc)).
[65] Doc. 3 at ¶ 11.
[66] *Young v. Ice*, No. 1:14-cv-1475, 2015 WL 471675, at *3 (N.D. Ohio Feb. 4, 2015) (citing *Goddard v. Ky. Dep't of Corr.*, 205 F.3d 1340, 2000 WL 191758, at *2 (6th Cir. Feb. 7, 2000) (unpublished table opinion)).
[67] Doc. 26-2 at 22.
[68] *Jackson v. Madery*, 158 F. App'x 656, 662 (6th Cir. 2005) (citing *Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir. 1994) ("Because the finding was based on some evidence of the violation, the finding essentially checkmates his retaliation claim.")).

Case No. 1:14-CV-01237
Gwin, J.

### IV. Conclusion

For the reasons above, the Court **GRANTS** Defendants' motion for summary judgment.[69]

IT IS SO ORDERED.


Dated: April 28, 2015              s/    *James S. Gwin*
                                   JAMES S. GWIN
                                   UNITED STATES DISTRICT JUDGE

---

[69] Defendants' pending motions to extend deadlines are accordingly **DENIED** as moot. *See* Doc. 35; Doc. 36.